IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WALTER MITCHELL,

      Plaintiff,

vs.                             No. 05-CV-1155 JB/LAM

BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF SANTA FE,
a Governmental Entity organized under
the Laws of the State of New Mexico and
its subsidiary Santa Fe County Sheriff's Department,
and DENNIS O'BRIEN, a Deputy Sheriff with the
Santa Fe County Sheriff's Department,
individually,

      Defendants.

## REPLY IN SUPPORT OF INDEPENDENT ACTION IN EQUITY TO OBTAIN RELIEF FROM A JUDGMENT

### PROCEDURAL ISSUES

Plaintiff utterly misapprehends the nature of the action before the Court. And Plaintiff is patently incorrect when he argues that Defendant "is not specific as to the subsection of [Rule 60]" on which Defendants rely in bringing this action.[1] The Court may simply look to the opening sentence of the pleading at bar, which states that it is being brought "pursuant to Fed.R.Civ.P. 60(d)(1) and the common law" (see Doc. 49, at p. 1), and to the numerous citations thereafter in the pleading to Rule 60(d)(1), and to the many cases and treatises thereafter in the pleading discussing the long-recognized, well-established

---

[1] Plaintiff in his response repeatedly refers to "Defendant" in the singular, notwithstanding that both of the named Defendants (the Board of County Commissioners and Dennis O'Brien) have, expressly and unambiguously, filed the independent action at bar.

independent action in equity to obtain relief from a judgment to which Rule 60(d)(1) refers.[2]

Thus, Plaintiff's lengthy discussions in his response about Rules 55(c), 60(b)(3) and 60(b)(6), and their respective requirements and time limitations, are inapposite. Indeed, Plaintiff never once mentions, let alone discusses or disputes, the jurisprudence applicable to the independent action in equity which, as previously noted by Defendants, is not limited by any specific time for filing, other than the doctrine of laches. See Independent Action (Doc. 49) at 2 (citing 10th Circuit cases); see, i.e., Crosby v. Mills, 413 F.2d 1273, 1276 (10th Cir. 1969) (regarding an independent action, "the only time limitation [for filing] is the equitable doctrine of laches"). And laches surely is not at issue if the Court ultimately finds, based on the evidence submitted in support of the instant action, that both Defendants first became aware of the existence of the judgment in late February 2010; the instant action was filed on March 23, 2010, approximately one month after discovery. See Material Fact No. 40 (Doc. 49), p. 13.

Although Plaintiff in his response purposefully ignores the independent action jurisprudence, it cannot be wished out of existence. There are dozens of cases, perhaps hundreds, that

---

[2] The current version of Rule 60(d)(1), which was effective December 1, 2007, states: "This rule [Rule 60] does not limit a court's power to: (1) entertain an independent action to relieve a party from a judgment, order, or proceeding[.]" The 1946 version of Rule 60 contained a substantively identical provision in subsection (b). Pre-2007 cases, of course, cite to Rule 60(b).

discuss the independent action in equity to obtain relief from a
judgment, including the Supreme Court case of <u>Tates v. Beggerly</u>,
524 U.S. 38 (1998).   In <u>Tates</u>, the Supreme Court noted that of the
multiplicity of common-law writs that had been available prior to
the adoption of the Federal Rules to obtain post-judgment relief,
only the so-called "independent action" had survived; but survive,
it did.   The Supreme Court noted:

> The "independent action" sounded in equity.   While its
> precise contours are somewhat unclear, it appears to have
> been more broadly available than the more narrow writs
> that the 1946 amendment [to Rule 60] abolished.

> \*\*\*

> Independent actions must, if Rule 60(b) is to be
> interpreted as a coherent whole, be reserved for those
> cases of "injustices which, in certain instances, are
> deemed sufficiently gross to demand a departure" from
> rigid adherence to the doctrine of res judicata.
> (citation to prior Supreme Court case omitted)

> \*\*\*

> The sense of these expressions [in prior cases] is that,
> under the Rule [now Fed.R.Civ.P. 60(d)(1)], an
> independent action should be available only to prevent a
> grave miscarriage of justice.

<u>Tates v. Beggerly</u>, <u>supra</u>, 524 U.S. at 45-47.   The Court in <u>Tates</u>
concluded that relief under the independent action was unavailable
to set aside a settlement agreement entered twelve years earlier,
where the basis was merely an alleged failure by the Government to
"thoroughly search its records" and then locate and furnish to
opposing parties some arguably relevant information in discovery,
which information might possibly have impacted their claims, and
possibly but not certainly have impacted the settlement agreement.
The Court concluded that under the circumstances, "[I]t surely

-3-

would work no "grave miscarriage of justice," and perhaps no miscarriage of justice at all, to allow the judgment to stand." Id., 524 U.S. at 47; compare with, i.e., Marshall v. Holmes, 141 U.S. 589 (1891)(plaintiff alleged that judgment had been taken against her in the underlying action based on forged document) (cited by Court in Tates v. Beggerly, supra, 524 U.S. at 47 as example of case where independent action would lie).

    As argued in the pleading at bar, the judgment entered in the instant case represents a true miscarriage of justice, and constitutes precisely the kind of situation subject to remedy by an independent action in equity to obtain relief from the judgment.

## UNDISPUTED MATERIAL FACTS

    In their pleading (Doc. 49, pp. 3-13), Defendants presented forty Material Facts, each of which was supported by affidavits, certified copies of court records, pleadings and papers of record, and/or other documents. The Court should take note of which ones of those forty Material Facts are disputed by Plaintiff in Plaintiff's response (Doc. 51, pp. 2-9, ¶¶ 1-9): **only 24, 35 (as to service of the Final Judgment only), and 40**. Put differently, of all the material facts presented by Defendants in support of their independent action, Plaintiff disputes only that (1) service of process of the original complaint (naming the City of Santa Fe and City Police Officer Dennis O'Brian (sic.)) was never made on Defendant O'Brien, and (2) Defendant O'Brien was not aware of the judgment until late February 2010, because, according to an affidavit submitted by Plaintiff, Plaintiff's "contract paralegal"

-4-

allegedly mailed a copy of the judgment to somebody in early 2008.
Defendants will address these disputed facts below.  However, it is
significant  to  emphasize  that  <u>no  other  fact  is  disputed  by
Plaintiff, and certainly not with a whit of proffered evidence.</u>

It therefore is undisputed that, among other things, there was
a trial in the New Mexico district court more than a year before
Plaintiff filed the instant civil action in federal court, at which
Plaintiff was represented by two attorneys, and at which Plaintiff
was convicted beyond a reasonable doubt of two felonies based upon
the  acts  that  form  the  basis  of  his  civil  action  at  bar:
aggravated assault upon Defendant O'Brien, and aggravated assault
with a deadly weapon upon Mayre Perez, an eleventh grade student.
Based on proof beyond a reasonable doubt, the state trial court
made findings of fact as to, *inter alia*, Plaintiff's "hypomanic"
sword attacks on Defendant Dennis O'Brien (at a time when Plaintiff
had "a substantial disorder of thought, mood and behavior"), the
latter of whom was forced to back up in retreat, pointing his
firearm at Plaintiff while he and other officers "continually"
instructed Plaintiff to put down his sword, which Plaintiff refused
to do, until finally O'Brien had backed up against a parked car and
no longer was able to retreat any further, at which point the
sword-wielding Plaintiff quickened his pace towards O'Brien and,
"when [Plaintiff] had advanced to within approximately ten feet of
[O'Brien]," O'Brien discharged his firearm thrice into Plaintiff's
advancing body.   <u>See</u> Fact Nos. 1-5 (Doc. 49), pp. 3-4.

It also is not disputed that Plaintiff's verified allegations

-5-

in his original complaint, and his identical allegations in his
amended complaint regarding the adjudicated findings of fact
summarized above, was simply that Defendant O'Brien shot Plaintiff
"in the back" and "from behind" as Plaintiff was "walking away"
from the officer and that at the time he was shot, Plaintiff posed
no "legitimate threat" to any person including Defendant O'Brien.
See Docs. 1 and 13 (complaints).    It is obvious, and not
disputable, that Plaintiff's version of events (shot in the back
while walking away) contradicts the state court's findings of fact
(shot during a felonious sword charge towards O'Brien) which,
according to the undisputed evidence, Plaintiff did not appeal.
See Fact No. 11.

        Although not a fact, Plaintiff does not even address the
argument that his foregoing allegations (the factual heart of the
instant civil action), which were contradicted by the state court's
prior findings of fact in the criminal case, were barred from being
raised by the doctrine of collateral estoppel.   See the argument
and authority set forth in Independent Action (Doc. 49) at 18-20.
And quite apart from legal, collateral estoppel issues, Plaintiff's
false statements and omissions of material fact in his complaints
seem especially relevant in an equitable action like this one.

        In like vein, there is no dispute that Plaintiff's two
complaints omit any mention of, inter alia, Plaintiff's sword,
Plaintiff's attacks on O'Brien, the fact that Plaintiff refused
repeated orders to drop his sword and that he was shot as he
advanced towards O'Brien, and his prior state-court criminal trial

-6-

and conviction based upon the very acts that formed the basis of his federal-court civil action.  See Fact Nos. 13, 27 (Doc. 49 at pp. 6, 10).

It is not disputed that Plaintiff's complaint in the action at bar, which he allegedly served on Defendant O'Brien, misspelled Dennis O'Brien's surname and misidentified O'Brien as an officer of the City of Santa Fe Police Department, instead of a deputy of the Santa Fe County Sheriff's Department; indeed, Plaintiff concedes these two facts.  See Response in Opposition (Doc. 51) at 3, ¶ 5.

It is not disputed that the form of summons allegedly served on Defendant O'Brien (with misspelled name and misidentified title) violated Fed.R.Civ.P. 4(a)(1)(A) as to form (see Fact No. 20), nor that the Sheriff's Department's internal paperwork related to that specific service of process contains material anomalies: that the deputy to whom service was assigned was "Cpl. V. Pacheco" (rather than Sgt. Ken Johnson), that "Defendant" is the "City of Santa Fe" (rather than Dennis O'Brien), that the Plaintiff in the case is Paula Montoya (rather than Walter Mitchell) and that Ms. Montoya is Pro Se (rather than being represented by Dennis W. Montoya, Esq.) (see Fact No. 23 (Doc. 49 at p. 9)).  There is no dispute that the person who signed the Return of Service cannot recall whether he did, in fact, serve Dennis O'Brien.  See Fact No. 21.

It also is not disputed that the Return of Service as to Defendant O'Brien filed with the Court has been tampered with, using white out to alter the typed words "Police Dept." and replace those words with handwritten words stating "County Sheriff's Dept."

-7-

See Fact Nos. 20-22, Doc. 49 at pp. 7-9.[3]  Plaintiff asserts that "the correct agency [was] added under [Defendant O'Brien's] name prior to service, on November 18, 2005." See Response (Doc. 51) at p. 3, ¶ 6.  But the affidavit he cites in support does not address the issue at all.  Thus, there is no evidence (only the statements of counsel, which do not constitute evidence) as to when the official, court-issued summons was altered, or who "added" the "correct agency" to the document.  It is this altered document, supported by a contradictory Sheriff's Department document, that is the linchpin of Plaintiff's argument that service of process was made upon Dennis O'Brien and that the Court thereby obtained valid personal jurisdiction over Defendant O'Brien.  Alone, on its face, the altered Return of Service (Doc. 3; compare Doc. 1-2) raises questions.  See Garberg & Assoc., Inc. v. Pack-Tech Int'l Corp., 115 F.3d 767, 772 (10th Cir. 1997) (district courts have "affirmative duty to look into its jurisdiction...over...the parties"; "a district court must determine whether it has jurisdiction over the defendant before entering judgment by default against a party who has not appeared in the case").

There is no dispute that the Court's Order on Plaintiff's Motion for Default Judgment, upon which the Final Judgment rests, speaks about a "Defendant Russell Fleming" in addition to "Defendant Dennis O'Brian" (sic.).   See Fact No. 25 n. 5.

_____

[3] Defendants have arranged to have the original court record transmitted from Denver to the District Court in Albuquerque where, on information and belief, it now remains, so the Court may, if it chooses, view the original of the altered, filed Return of Service.

Plaintiff, who prepared and submitted the order to the Court, offers no explanation for this material anomaly.

There is no dispute that Plaintiff filed his Amended Complaint on April 19, 2006, five months after the purported service on Defendant O'Brien, and that Plaintiff never served copies of his Amended Complaint (naming the County of Santa Fe as Defendant and correctly identifying Defendant O'Brien as a Deputy County Sheriff) on either party; indeed, Plaintiff concedes the fact as to Defendant O'Brien, and ignores the fact as to Santa Fe County. See Fact No. 30 (Doc. 49) at p. 11; compare with Response (Doc. 51) at p. 3, ¶ 8. There is no dispute that from the date of the purported service on Defendant O'Brien through entry of the Final Judgment (a period of over two years), Plaintiff did not serve any document on either named Defendant, including notice of the damages trial, which was held *in absentia*; there is no dispute that Plaintiff did not dismiss Defendant County until after the damages trial had concluded and a verdict had been rendered; and there is no dispute that the County, from the outset, was legally obligated to pay the judgment. See Fact Nos. 30-38.

## DISPUTED FACTS

There are two material facts in dispute: Plaintiff's claim that he caused service of process to be made on Defendant O'Brien, which has been discussed at length, and his new assertion that two days after the Court entered its Final Judgment (Doc. 45, filed December 31, 2007), a "contract paralegal" mailed a copy of that judgment to Dennis O'Brien. The latter contention is supported by

-9-

an unsigned, unnotarized "affidavit" of Brandon Cummings, attached
as an exhibit to the Response in Opposition.  See Doc. 51-1.[4]

The latter fact is disputed by Dennis O'Brien.  See Exhibit M,
attached hereto.  Under oath, Defendant O'Brien states that he did
not receive, by mail or otherwise, nor did he see, a copy of the
Final Judgment entered in this case, nor a copy of the Order on
Plaintiff's Motion for Default Judgment, until he obtained copies
from the Court Clerk in late February 2010 after he first become
aware of the judgment through media inquiries.  He further states
that he would not have ignored the Final Judgment or anything else
filed in this case if he had seen it, but instead, he would have
immediately brought any document filed in this lawsuit to the
Sheriff and the County Attorney, and taken whatever legal action
was necessary to try to have the judgment reversed or voided.  See
Second Affidavit of Dennis O'Brien, Ex. M, ¶¶ 3-4, attached hereto.

The Court should keep in mind that Dennis O'Brien knew of his
own certain, personal knowledge that Plaintiff Walter Mitchell had
attacked him with a sword and had been convicted therefor; a
judgment in the amount of $3 million against O'Brien in favor of
Mitchell would not likely have been ignored, or simply discarded.
The fact that the instant independent action was filed soon after

_____

[4] An unsigned, unsworn affidavit does not constitute evidence.
See Wright, Miller & Kane, Federal Practice and Procedure, Civil 3d
at § 2738, p. 363 ("unsworn affidavits will be rejected"); see
Little v. BP Exploration & Oil Co., 265 F.3d 357, 363 n. 3 (6th
Cir. 2001); Steinle v. Warren, 765 F.2d 95, 100 (7th Cir. 1985).
The affidavit also violates the CM/ECF Administrative Procedures
Manual of the Court.  See § 6(b)(3).

Dennis O'Brien learned about the existence of the judgment in late February 2010, moreover, surely corroborates that proposition. See also First Affidavit of Dennis O'Brien, Ex. J (Doc. 49-10) at ¶ 6.

The Cummings "affidavit" is curious. Brandon Cummings worked as a "contract paralegal" for attorney Dennis W. Montoya in the instant case (and presumably was paid by the hour for services rendered pursuant to the contract). He states that he particularly remembers that he "came into Dennis W. Montoya's office on the day after New Year's" for the "express purpose" of mailing a copy of the Court's Final Judgment. See Affidavit of Brandon Cummings (Doc. 51-1), ¶¶ 3, 7-8.[5] To whom did he mail it? The affidavit does not say. To what address? Why would an attorney summon a contractor to come to his office for the "express purpose" of simply posting a letter? And where is a certificate of service, or a Postal Service return receipt, or a delivery confirmation? The Cummings affidavit, in short, is unsupported and uncredible.

**MERITORIOUS DEFENSE**

One of Plaintiff's oddest arguments is that Defendants failed to show a meritorious defense to Plaintiff's allegations that Defendant O'Brien shot Plaintiff "in the back" and "from behind" as Plaintiff was "walking away" from the officer and that at the time he was shot, Plaintiff posed no "legitimate threat" to any person

---

[5] Mr. Cummings's "affidavit" speaks about mailing a copy of "the default judgment" (see Doc. 15, filed May 9, 2006) but he evidently meant the Final Judgment (Doc. 45), because it was the latter document that was entered on December 31, 2007, and he supposedly mailed it "on the day after New Year's" and "two days after it was posted on the Court's CM/ECF server." See Doc. 51-1.

including Defendant O'Brien.   See Response (Doc. 51) at 11; see Docs. 1 at ¶ 11, 13 ¶ 11 (complaint and first amended complaint).

To the contrary, Defendants direct the Court's attention to their Independent Action pleading (Doc. 49) at ¶¶ 7-8, wherein Defendants represent to the Court that they would have called up to seven eyewitnesses at trial to testify to the material facts as found by the state court in the criminal trial (which facts contradict Plaintiff's version of the events).   Defendants also direct the Court to pp. 18-20 of their pleading, wherein they assert they would have raised the doctrine of collateral estoppel seeking to bar Plaintiff's attempted re-litigation of the facts. Significantly, Plaintiff's response entirely ignores the question of collateral estoppel.   Perhaps Plaintiff has no good answer.

### PERSONAL JURISDICTION, NOTICE, AND DUE PROCESS OF LAW

The evidence shows that service of process of the summons and original complaint on Defendant Dennis O'Brien is questionable, if not non-existent (as Defendants contend), and defective as to form. It is undisputed, moreover, that the amended complaint (which correctly identified O'Brien's surname and official title and correct employer) never was served on O'Brien.   Thus, the Court's personal jurisdiction over Defendant O'Brien is questionable, if not non-existent.   In addition, there never was service of process made on Defendant Santa Fe County, which was both a named defendant and a real party in interest, and was legally obligated by statute to pay any judgment.   It likewise is undisputed that apart from service of process, there was no notice of any kind given or

-12-

attempted to be given to either party during the two+ years between
"service of process" on O'Brien and entry of the Final Judgment,
during which time the Court held various proceedings including a
jury trial on damages.

As the Supreme Court has noted, "[a]n elementary and
fundamental requirement of due process in any proceeding which is
to be accorded finality is notice reasonably calculated, under the
circumstances, to apprise interested parties of the pendency of the
action and afford them the opportunity to present their
objections[,]" and the failure to give notice violates due process.
See Peralta v. Heights Medical Center, Inc., 485 U.S. 80, 84
(1988).  In addition, as previously noted, a district court has an
"affirmative duty" to ensure that it has personal jurisdiction over
a party before it enters judgment by default, where the party has
not appeared; a default judgment cannot stand in the absence of
personal jurisdiction.  See Garberg & Associates, Inc., supra ("the
district court was required to determine the personal jurisdiction
issue before considering entry of the default judgment"); accord,
Williams v. Life Savings and Loan, 802 F.2d 1200 (10th Cir. 1986).
Standing alone, the material misidentification of both parties in
the complaint and the altered Return of Service raised questions.

## CONCLUSION

In equity, fairness and considerations of due process of law,
the Court should vacate and make void the Final Judgment entered
herein December 31, 2007, and dissolve the Notice of Lis Pendens.

Respectfully submitted,

**/s/**
_____
**MICHAEL DICKMAN**
Post Office Box 549
Santa Fe, New Mexico 87504
(505) 989-9360
**Attorney for Defendants**


### CERTIFICATE OF SERVICE

I certify that I caused a copy of this reply
to be electronically served on

Dennis W. Montoya, Esq.

on the date of filing hereof
at his email address as registered on CM/ECF.

**/s/**
_____
**MICHAEL DICKMAN**

-14-