```
 1                IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF NEW MEXICO

 3
     WALTER MITCHELL,
 4
                  Plaintiff,
 5
            vs.                        NO:   CIV-05-1155 JB/LAM
 6
     THE BOARD OF COUNTY COMMISSIONERS
 7   OF THE COUNTY OF SANTA FE, et al.,

 8                Defendants.

 9       Transcript of Pretrial Conference before The Honorable

10   James O. Browning, United States District Judge, held in

11   Albuquerque, Bernalillo County, New Mexico, commencing on

12   Friday, December 7, 2007, at 9:35 a.m. and concluding at

13   9:57 a.m.  Proceedings recorded by mechanical stenography;

14   transcript produced by computer-aided-transcription.

15   For the Plaintiff:

16        MONTOYA LAW FIRM, INC.
          Post Office Box 15235
17        Rio Rancho, New Mexico 87174-0235
          BY:  MR. DENNIS W. MONTOYA
18
     Also Present:  Mr. Sam Garoffa
19                  Ms. Paula Montoya

20

21

22
              Danna Schutte Everett, CRR, RPR, RMR, CCR 139
23                    United States Court Reporter
                    333 Lomas Boulevard, Northwest
24                   Albuquerque, New Mexico  87102
                       Phone:   (505) 348-2283
25                      Fax:   (505) 348-2285
```

1           THE COURT:  Good morning, everyone.  I appreciate
2   everyone making themselves available to me.
3           I think I just brought -- I think I mixed my files
4   here for the morning.
5           The Court will call Walter Mitchell versus the Board
6   of County Commissioners of the County of Santa Fe, et al.,
7   Number CIV-05-1155 JB/LAM.
8           For the plaintiff, let me have entry of appearances.
9           MR. MONTOYA:  Good morning, Your Honor.  Dennis
10  Montoya representing the plaintiff, Walter Mitchell.
11          At counsel table is litigation paralegal Paula
12  Montoya; and Sam Garoffa is a first year associate with my
13  office.  For purposes of this case, he'll be functioning as an
14  attorney paralegal.
15          THE COURT:  All right.  Mr. Montoya, good morning to
16  you.
17          Ms. Montoya, good morning to you.
18          Is it Mr. Garoffa?
19          MR. GAROFFA:  Garoffa, Your Honor.
20          THE COURT:  Good morning to you.
21          And The Board of County Commissioners of the County
22  of Santa Fe -- you've chosen not to serve them at the present
23  time.  Is that where the Board of County Commissioners stands
24  at the present time?
25          MR. MONTOYA:  I believe that's correct, Your Honor.

1          THE COURT:  And then Dennis O'Brian, you served him
2   with the first Complaint, not the Amended Complaint and he's
3   never entered an appearance, and that still stands to be the
4   case?
5          MR. MONTOYA:  That is correct, Your Honor.  And we do
6   have default against the office.
7          THE COURT:  Do you know where Mr. O'Brian is?  Do you
8   know anything about him?
9          MR. MONTOYA:  He was personally served at the
10  sheriff's department at Santa Fe County.  That would have been
11  back in 2005, I believe.  And as far as I know, Your Honor, he
12  remains in the employ of that department.
13         THE COURT:  Are there any obligations to serve
14  besides the individual, such as the Attorney General or the
15  office or anything like that?
16         MR. MONTOYA:  For a proceeding against a county
17  official, we researched this, and there is no requirement to
18  serve the Attorney General, there's no requirement to serve the
19  Board of County Commissioners against the officer in his
20  individual capacity, which is essentially the default that we
21  have.
22         THE COURT:  All right.  Well, let's, then -- We've
23  got a trial setting for Monday to have the jury decide damages.
24         Mr. Montoya, don't feel like you have to stand for
25  me, it's just a pretrial conference, but I never could stay

1  seated, so you do whatever is comfortable for you.
2              How long do you think the trial will last,
3  Mr. Montoya?
4              MR. MONTOYA:  Judge, we will be presenting two
5  witnesses.  I do not anticipate that it will take longer -- and
6  I'll be very liberal and say two-and-a-half hours.  I don't
7  think it's going to take even two, but perhaps if my client
8  becomes a little more descriptive than I think, it might get to
9  two and a half.
10             Our economist will probably deliver all the
11 information that he has to deliver in 30 to 45 minutes.
12             THE COURT:  All right.  And I should put on the
13 record -- So you think it will be a day?
14             MR. MONTOYA:  Basically, between jury selection and
15 the presentation and the deliberation, it will be a day.
16             THE COURT:  You think a day?  Okay.
17             I should put on the record that we did file both the
18 notice -- it would have been in electronic form.  We've also
19 filed a notice of this pretrial conference today, and no one
20 has appeared on behalf of Mr. O'Brian.  And I don't believe we
21 have any address for him.  Since he hasn't entered an
22 appearance, we don't have any address for him.
23             Mr. Montoya, anything you need about the courtroom,
24 other than what equipment we have here?  Is this satisfactory?
25 Do you need anything additional?

1         MR. MONTOYA:  This is perfectly fine, Your Honor.  We
2    may use the overhead.  I don't think we have any computerized
3    electronic projections, and I think we're set to go.
4         THE COURT:  How about closings?  Do you wish to have
5    those before or after instructions?
6         MR. MONTOYA:  We would proffer to do those after the
7    instruction business, and we'll do it -- I think it will be a
8    very brief and concise closing.
9         THE COURT:  All right.  I'm going to put together a
10   preliminary jury instruction just using something I've used in
11   the past.  Normally, because we're dealing with a case that
12   hasn't been resolved on the merits, that I put the elements of
13   the offense into it.
14        Is there anything that you would want or you can
15   think would be appropriate for me to say about what they should
16   be thinking about or listening for as far as damages, or should
17   I just sort of leave -- There's really no elements of the
18   offense here.  I could just indicate that they're just going to
19   be deciding damages and then just leave it for the closing
20   instructions to define what those are.  Does that make sense to
21   you, or have you got some different suggestion?
22        MR. MONTOYA:  We have presented a set of proposed
23   jury instructions, Your Honor, and I was -- although it is
24   based on Tenth Circuit case law and the best we could find, I
25   was a little uneasy with the drafting of our proposed

```
 1   instruction number 1, because it says this is a case where
 2   plaintiff has proven by a preponderance of the credible
 3   evidence the defendant is liable on the plaintiff's claim.
 4   That might be substituted with something that is more neutral,
 5   that says that liability on the plaintiff's claim has been
 6   established, simply because there has been no presentation of
 7   evidence as to liability.  But I would like to have the jury's
 8   attention focused on what their task is, and that is the
 9   determination of damages.
10            THE COURT:  All right.  I'll come up with some
11   wording.  I'll try to get you the preliminary jury instruction
12   sometime later today.  I'll try to work on it today and get it
13   out to you today.
14            MR. MONTOYA:  Thank you, sir.
15            THE COURT:  I was going to put into the jury
16   instruction that they could take notes.  Is that acceptable to
17   you?
18            MR. MONTOYA:  Absolutely.  Yes, sir.
19            THE COURT:  I was also going to put in there that if
20   they had questions, write them out.  I'll show them to you
21   before I ask them.  As you know -- you've been through a couple
22   of trials with me -- that I don't ask many, if any, questions.
23   I'll show them to you.  If you want to work them, fine; if you
24   don't want me to ask them, then I probably won't ask them.  But
25   they write out a note and send it to the end, and do it before
```

```
 1  the witness leaves the stand.
 2              Is something like that acceptable to you?
 3              MR. MONTOYA:  That's absolutely fine.  It's worked
 4  out smooth in the past trials.
 5              THE COURT:  How many jurors do you want to select for
 6  the trial on Monday?
 7              MR. MONTOYA:  We usually do eight, but seven would be
 8  acceptable, or even six.  For such a short trial, I'm not
 9  worried that we might lose one.
10              THE COURT:  Well, let's think about that.  I like
11  probably seven, rather than eight, because I can't imagine us
12  losing, probably, two in one day, although --
13              MR. MONTOYA:  Sure.
14              THE COURT:  -- we both have learned that in a trial
15  anything can happen.  So -- But let's go for seven, and we
16  might sort of think whether, if we get the jury moving along
17  real quick, get them all impaneled pretty quick, we might just
18  even go with six.  But let's give that some thought on Monday.
19              MR. MONTOYA:  Very well, sir.
20              THE COURT:  What time -- We've got the jury basically
21  here at 9:00.  Is that an okay starting time for you?
22              MR. MONTOYA:  That's perfect, Your Honor.
23              THE COURT:  Okay.  And do you want to just take a
24  normal lunch break around noon?  I've got a judge's meeting, so
25  that may dictate a little bit.  So why don't we go with noon.
```

1            And what time do you want to bring them back?
2            MR. MONTOYA:  Whenever is convenient for the Court.
3            THE COURT:  All right.  Let's shoot for 1:15, and
4    we'll just see how the day goes.
5            Your opening -- How long do you expect your opening
6    to last?
7            MR. MONTOYA:  I think that my opening will last 25
8    minutes.
9            THE COURT:  And your closing.
10           MR. MONTOYA:  Twenty.
11           THE COURT:  And voir dire.  How long do you expect
12   your voir dire to last?
13           MR. MONTOYA:  I'd like 20 minutes for voir dire.
14   Depending on responses, that could run longer if there are a
15   lot of venier persons that are answering questions.
16           THE COURT:  Are there any issues, exhibits or
17   witnesses or -- not really discovery, but any sort of
18   evidentiary issues that --
19           MR. MONTOYA:  I don't believe so, Your Honor.  We had
20   a hearing very similar without the jury back in June, I think,
21   of last year, and we are anticipating the presentation of
22   almost exactly the same items.  We might be a little more
23   concise in presentation of documents concerning medical
24   expenses.
25           THE COURT:  What I'm going to do is, I'm going to

1  take your jury instructions and look at those.  I probably need
2  a little bit of an introduction and tell them to select a
3  foreman.  I was thinking of going over to Judge Parker's
4  website and pulling off his sort of stock jury instructions and
5  sort of check this for, you know, credibility and what the
6  evidence is, circumstantial, that sort of stuff.
7           Any objection to me using --
8           MR. MONTOYA:  Not at all.  Those are well-developed
9  jury instructions.
10          THE COURT:  I'll try to put a set together.  I may
11 not get that done before the end of the day, but I'll shoot for
12 it.  If not, you may look at it on your fax machine over the
13 weekend.
14          The case description, what we're going to read to the
15 jury, if you could maybe put something together and fax it to
16 me and I'll look at it over the weekend.
17          Oh, you need to file it.
18          MR. MONTOYA:  We will file it.
19          THE COURT:  Just file it.  That will get it here.
20          Also, if you'll just write out your proposed voir
21 dire, if you'll do that and just go ahead and file a witness
22 list.  Let's try to give as much notice on the Internet as we
23 can here.  So if you'll put -- send me a final case
24 description, your proposed voir dire and a witness list, that
25 will give anybody that may be looking at it some notice.

1               You can pick up your jury questionnaires.  I have not
2    picked mine up yet for this trial.  We cut back the number of
3    jurors to bring in.  I just had a -- I had a jury in Monday
4    that we were in the middle of voir dire and the parties
5    settled, so Jury Services is not exactly happy with my cost
6    utilization right now of jurors, so I may cut back this a
7    little bit to bring in --
8               What are we thinking of bringing in here?
9               MS. SANCHEZ:  I've asked for a target of 25.
10              THE COURT:  Yes, that's probably going to be more
11   than enough.  Don't you think --
12              MR. MONTOYA:  I would hope that we could certainly
13   select the jury from that.
14              THE COURT:  I may cut it down a little more.  I just
15   can't imagine us going too far.  Do you think we could do it in
16   18?
17              MR. MONTOYA:  I would hope so.
18              THE COURT:  Yes.  I'll give it some thought.  But I
19   may cut it down a little bit.  But you can pick up -- Have you
20   picked up your questionnaires yet?
21              MR. MONTOYA:  We have not.  We're --
22              THE COURT:  You can pick them up today.
23              And, let's see.  Mr. Montoya's already sent the jury
24   instructions on an acceptable format?
25              MS. SANCHEZ:  Yes.

1          THE COURT:  Shall we leave it a unanimous verdict?
2          MR. MONTOYA:  I would like to leave that open, Your
3  Honor.  If the jury communicates to us that they're close but
4  can't reach unanimity, we would like an opportunity to consider
5  changing that perhaps at the end, but for now I would like to
6  leave it at unanimous.
7          THE COURT:  Yes, I would, too, because -- I mean,
8  it's really up to the parties, but the way I've construed this
9  jury demand, you know, it may not be something we can give up.
10 It may be something we're stuck with unanimity, since we don't
11 have a party here.  So let's leave it.  I'll draft the
12 instructions that it has to be unanimous, and if something
13 comes up, we'll cross that bridge when it comes up.
14         MR. MONTOYA:  Very well, sir.
15         THE COURT:  Mr. Montoya, you know that I usually give
16 copies of the instructions to each juror when they go back and
17 I also have Ms. Sanchez show the jurors on the ELMO as I read
18 the instructions.  Any objection to either one of those
19 processes?
20         MR. MONTOYA:  None at all.
21         THE COURT:  Which is probably something we could have
22 talked about earlier, and it's still within your power if you
23 know it.  You know, Santa Fe has a different jury pool for
24 northern New Mexico, but I think that what they did for this is
25 just pulled the Albuquerque, which goes all the way to

1  Farmington, Grants, Gallup.  It sort of swings this way, and
2  Santa Fe goes that way, so you're getting a huge population
3  base, but you are getting -- you're not getting a Santa Fe jury
4  pool.  And if you -- We probably -- We probably -- You and I
5  should have thought of this earlier, but it's not going to be a
6  Santa Fe jury pool.  If you want to push this trial forward and
7  then we re-select the jury, we can, but that's where we are on
8  the jury.
9          MR. MONTOYA:  That is a question I would like to
10 consult with my client, Your Honor.  And I can get back to the
11 Court probably within two hours with a response.
12         THE COURT:  If I don't hear anything from you, I'll
13 assume it's okay.  I would appreciate a call.
14         MR. MONTOYA:  We will call.
15         THE COURT:  But if I don't hear anything from you,
16 I'm assuming that the jury pool here is fine.  But if you would
17 prefer it, we can vacate the trial, re-draw the jury, and then
18 get a Santa Fe jury pool.
19         It's so hard -- I wish we had maybe thought of doing
20 this in Santa Fe, although it's so difficult to get a courtroom
21 up there.  I've got two senior judges ahead of me, and Judge
22 Herrera uses that a lot, so it's hard for me to get a day up
23 there, but if we do decide to go with the Santa Fe jury pool,
24 maybe I can find a day and it's clear and we can do it up in
25 Santa Fe.  But you may prefer it just down here.  You're down

1  here, as well, and there's just a couple of witnesses.  But
2  we're bringing the jury in from northern New Mexico.  It might
3  save them a little bit of trip if we can get it.
4              I think that's all the questions I had.
5              Ms. Sanchez, do you have anything that we need to
6  discuss?
7              MS. SANCHEZ:  No, sir.
8              THE COURT:  Mr. Montoya, you've been with me for a
9  couple of trials so you know how I kind of run things, but is
10 there anything that you'd like to ask or bring up while we're
11 together this morning?
12             MR. MONTOYA:  On the proposed voir dire, would Your
13 Honor like to have a courtesy copy faxed to chambers?
14             THE COURT:  We'll pull it off.  Just file it that
15 way.
16             MR. MONTOYA:  Very well, sir.
17             THE COURT:  That way, if anybody's looking at this
18 out there, they'll see it, and perhaps if they want to get
19 interested in the case, they can.
20             MR. MONTOYA:  Well, that would be different.  Thank
21 you, sir.  I think those are all my questions.
22             THE COURT:  All right.  Well, if you would be here --
23             Tell me what time you think Mr. Montoya needs to be
24 here.
25             MS. SANCHEZ:  8:45, unless he's got something.

Danna Schutte Everett
Official United States Court Reporter
333 Lomas Boulevard, Northwest
(505) 348-2283

1          THE COURT:  Why don't you maybe -- Why don't you try
2   to be here about 8:15 so that if I don't get these jury
3   instructions out over the weekend or something maybe it will
4   give you a chance to look at them and we can put it on the
5   record and I can make changes, because this trial is liable to
6   move pretty quick.  And so normally I can kind of do jury
7   instructions during the week, but this one's going to move so
8   quick that you and I are probably going to have to be fairly
9   ready early.
10          I don't want you hanging around the door waiting for
11  the doors to open, but, you know, if you'd be here about 8:15
12  or something, I'll try to be here, and we can finalize the
13  preliminary and the final instructions and anything else that
14  may happen.  They can get the jury in here pretty quick and
15  maybe get started right on time.
16          If I do get the jury instructions out to you today,
17  if they're okay with you, if you will call Ms. Sanchez and say
18  they're acceptable, that would be helpful, and I can kind of
19  put that task ahead.
20          MR. MONTOYA:  Certainly, Your Honor.  I have a fairly
21  free day today, so I think I can get to them directly.
22          THE COURT:  Anything further, Mr. Montoya?
23          MR. MONTOYA:  Nothing further at this time.  Thank
24  you, sir.
25          THE COURT:  All right.  We'll see you on Monday

1   morning about 8:15 and try to -- Two things I had sort of
2   thought of.  I mentioned in my opinion on the jury demand
3   something.  I re-read that today, and there was one thing I was
4   going to ask.  Is the default judgment on the first Complaint
5   or is it on the second Complaint?
6           MR. MONTOYA:  My recollection, Your Honor, is that it
7   is on Complaint number one.
8           THE COURT:  What is the difference between the
9   amended and the original Complaint?  Is it important to
10  Mr. O'Brian?
11          MR. MONTOYA:  I believe that it is not significant to
12  Mr. O'Brian.  I believe that there were some technical and
13  typographic errors that were cured.
14          THE COURT:  It doesn't affect the damages in any way?
15          MR. MONTOYA:  No, sir.  It's fundamentally the same
16  Complaint from the first to second version.
17          Oh, you know, what it is, Your Honor, is that we --
18  in Complaint number one, we had misunderstood that Deputy
19  O'Brian was with the Santa Fe Police Department, when, in fact,
20  it's Santa Fe County Sheriff's Department.  And there are no
21  other changes.
22          THE COURT:  All right.  All right.  Well, I will see
23  you on Monday, and we'll try to get this -- Are we going to be
24  looking at a final judgment, or do you intend to do anything if
25  the County commissioners, let's say, get a verdict?  What's

1   your thoughts with the case?  Are you going to want me to enter
2   a final judgment with the amount, if any, that the jury awards,
3   or are you going to attempt to do something with the county
4   commissioners, or what's your thoughts?
5           MR. MONTOYA:  I believe it is highly likely that we
6   are going to want a final judgment with whatever the jury
7   result is, but that is a decision that I would consult with my
8   client before --
9           THE COURT:  So your thoughts are you may just dismiss
10  without prejudice the County commissioner claim and then just
11  take the final judgment against O'Brian?
12          MR. MONTOYA:  I would say that's very likely, Your
13  Honor.
14          THE COURT:  All right.  Well, you might give that
15  some thought and kind of see what the jury does.
16          All right.  Y'all have a good weekend.  Thank you for
17  your assistance.
18      (Court stood in recess at 9:57 a.m.)

```
 1                    C-E-R-T-I-F-I-C-A-T E
 2   UNITED STATES OF AMERICA
 3   DISTRICT OF NEW MEXICO
 4
 5        I, Danna Schutte Everett, RPR, CCR, CRR, Official
 6   Court Reporter for the State of New Mexico, do hereby
 7   certify that the foregoing pages constitute a true
 8   transcript of proceedings had before the said Court held
 9   in the City of Albuquerque, New Mexico, in the matter
10   therein stated.
11        In testimony whereof, I have hereunto set my hand on
12   this 18th day of May, 2010.
13
14                   _____
                     DANNA SCHUTTE EVERETT
15                   Registered Professional Reporter
                     Registered Merit Reporter
16                   Certified Realtime Reporter
                     NM Certified Court Reporter #139
17                   333 Lomas Boulevard, Northwest
                     Albuquerque, New Mexico  87102
18                   Phone:  (505) 348-2283
                     Fax:  (505) 348-2285
19
20
21
22
23
24   December 7, 2007, Mitchell vs. County of SF
25
```